Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SUPER ASPHALT PAVEMENT CORP.<br><br>Apelante<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE CAYEY<br><br>Apelado | KLAN202400286 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Caguas<br><br>Caso Núm. CG2021CV01385<br><br>Sobre: Arbitrios de Construcción |

Panel integrado por su presidente el Juez Bermúdez Torres, la Juez Aldebol Mora y el Juez Candelaria Rosa[1]

**SENTENCIA**

*Bermúdez Torres, Juez Ponente*

En San Juan, Puerto Rico, a 18 de noviembre de 2024.

I.

Hoy debemos resolver, si una persona natural o jurídica privada que contrata con una entidad gubernamental llevar a cabo una obra, tiene que pagar los arbitrios de construcción en la municipalidad donde ubica la misma. En atención al estatuto municipal aplicable, la jurisprudencia interpretativa, así como a la ley habilitadora de la entidad de gobierno concernida, respondemos que en efecto, Super Asphalt Pavement Corp. (Super Asphalt), tiene que satisfacer los arbitrios de la construcción que contrató con la Autoridad de Carreteras y Transporte (ACT), realizar en el Municipio Autónomo de Cayey (Municipio de Cayey). Elaboramos.

II.

El 9 de febrero de 2016, la ACT adjudicó la subasta de un contrato de obra para la repavimentación de la Carretera Estatal PR-175 a la compañía Super Asphalt, por la cantidad de $1,096,742.00. En la misiva notificándole

---

[1] Debido a la inhibición del Juez Adames Soto, mediante la Orden Administrativa OATA-2024-047 de 17 de abril de 2024, se designa en sustitución al Juez Candelaria Rosa, para entender y votar en el recurso de epígrafe.

Número Identificador

SEN2024_____

la adjudicación del referido *Proyecto*, la ACT consignó que la cantidad incluía los costos asociados a los arbitrios de construcción y de patente municipal.

Así las cosas, el 9 de junio de 2017, el Municipio de Cayey cursó a Super Asphalt una misiva notificándole la existencia de una deuda de $203,047.27, desglosada de la siguiente manera: **$65,804.52 por concepto de arbitrios de construcción**, $5,483.71 por patentes municipales, $150.00 por vertedero municipal y **$131,609.04 de penalidad por el incumplimiento con el pago de los arbitrios de construcción previo al comienzo de la obra**. El 7 de julio de 2017, Super Asphalt solicitó al ayuntamiento municipal la celebración de una vista administrativa con el propósito de que se le exonerara del pago de la penalidad notificada.

Posteriormente, el 19 de enero de 2018, el Municipio de Cayey notificó a Super Asphalt, a través de otra carta intitulada *Aviso Final*, que debía $204,500.46. Esta vez la cantidad se desglosó de la siguiente forma: **$65,804.52 por concepto de arbitrios de construcción**, $6,936.90 por patentes municipales, $150.00 por vertedero municipal y **$131,609.04 de penalidad por el incumplimiento con el pago de los arbitrios de construcción previo al comienzo de la obra**.

Celebrada el 12 de abril de 2021 la vista administrativa solicitada por Super Asphalt, mediante *Resolución* emitida el 15 de abril de 2021, el Oficial Examinador del Municipio de Cayey concluyó que Super Asphalt no pagó los arbitrios de construcción durante o antes de la ejecución del *Proyecto*. Determinó que la compañía constructora satisfizo los mismos posteriormente, el 5 de febrero de 2018, tras un requerimiento de pago por parte del Municipio de Cayey. Concluyó que Super Asphalt no acreditó en la vista haber presentado la *Declaración de Obra* requerida por la *Ley de Municipios Autónomos de Puerto Rico*, Ley Núm. 81 de 30 de agosto de 1991 (Ley de Municipios Autónomos o Ley Núm. 81-1991).[2] En fin, el Oficial Examinador

---

[2] La citada ley fue derogada por la Ley Núm. 107 de 13 de agosto de 2020, Ley Núm. 107-2020, según enmendada, conocida como el Código Municipal de Puerto Rico. Sin embargo, los hechos del presente caso ocurrieron vigente la derogada ley.

determinó que procede la imposición de la multa administrativa a Super Asphalt, pero redujo su monto a $110,979.48.

En su *Moción de Reconsideración* interpuesta el 5 de mayo de 2021, Super Asphalt planteó que las notificaciones de las cartas del 9 de junio de 2017 y la del 19 de enero de 2018 fueron defectuosas. En los méritos de la controversia arguyó, que, "la Ley 81, la cual establece el arbitrio de construcción, no permite la imposición de arbitrios de construcción de forma directa o indirecta a la ACT a través de la imposición del arbitrio al contratista".[3] Sostuvo que, toda vez que la ACT era la dueña de la obra en cuestión, Super Asphalt estaba exenta del pago de tales arbitrios de construcción.

Sin que el Municipio de Cayey se expresara sobre su *Moción de Reconsideración*, el 9 de junio de 2021, Super Asphalt recurrió ante el Tribunal de Primera Instancia mediante recurso de *Revisión Judicial*. Como parte del trámite judicial, el 30 de septiembre de 2021, Super Asphalt presentó *Moción Solicitando Anotación de Rebeldía y se Declare con Lugar Recurso.*

El 12 de septiembre de 2022 presentó *Moción de Réplica a Revisión Judicial y Solicitud por Virtud de la Regla 10.3 de las de Procedimiento Civil para que se dicte Sentencia por las Alegaciones*. El 11 de octubre de 2022 Super Asphalt presentó *Oposición a Moción de Réplica a Revisión Judicial y Solicitud por Virtud de la Regla 10.3 de las de Procedimiento Civil para que se Dicte Sentencia por las Alegaciones.*

Superados ciertos incidentes procesales, el 21 de febrero de 2024, notificada el 23, el Foro primario emitió *Sentencia* confirmatoria de la determinación del Municipio de Cayey. En ella, ordenó a Super Asphalt a satisfacer la multa administrativa de $110,979.48. Todavía inconforme, el 25 de marzo de 2024, Super Asphalt acudió ante nos mediante *Apelación*. Plantea:

---

[3] Apéndice del recurso, págs. 23-35.

**PRIMER ERROR: ERRÓ EL TPI AL CONFIRMAR EL PROCEDER DEL MUNICIPIO AUTÓNOMO DE CAYEY DE IMPONER UNA MULTA A SUPER ASPHALT SIN CONCEDERLE UN DEBIDO PROCESO DE LEY.**

**SEGUNDO ERROR: ERRÓ EL TPI AL DETERMINAR QUE PROCEDE EL PAGO DE ARBITRIOS DE CONSTRUCCIÓN Y DE LA PENALIDAD IMPUESTA POR EL MUNICIPIO AUTÓNOMO DE CAYEY A SUPER ASPHALT, A PESAR DE QUE LA OBRA EN VIRTUD DE LA CUAL SE PRETENDE IMPUTAR RESPONSABILIDAD A SUPER ASPHALT ES DE LA AUTORIDAD DE CARRETERAS.**

**TERCER ERROR: ABUSÓ DE SU DISCRECIÓN EL TPI AL ACOGER LOS TARDÍOS ARGUMENTOS PRESENTADOS POR EL MUNICIPIO AUTÓNOMO DE CAYEY.**

El 24 de abril compareció el Municipio de Cayey mediante *Alegato de la Parte Apelada*. Con el beneficio de la comparecencia de las partes, el expediente judicial, el Derecho y jurisprudencia aplicables, resolvemos.

III.

En su primer señalamiento de error Super Asphalt esgrime cuatro potenciales violaciones a sus garantías del debido proceso de ley. Específicamente destaca, que las notificaciones que le cursó el Municipio de Cayey: 1) no incluyeron referencia alguna de la base legal para su determinación; 2) no explicaron cómo llegaron a las cantidades de dinero que se cobraban; 3) no se enviaron por correo certificado con acuse de recibo; 4) ni advirtieron sobre los derechos de revisión administrativa y revisión judicial, según lo requiere la Ley Núm. 170-1988.[4]

Por incidir en la facultad del Tribunal para acoger el recurso y resolverlo en sus méritos, examinamos como asunto primordial la validez de este primer señalamiento.

A.

La Carta de Derechos de la Constitución de Puerto Rico establece que: "[n]inguna persona será privada de su libertad o propiedad sin el debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes".[5] Este derecho fundamental garantiza a toda persona

---

[4] Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, 3 LPRA § 2101 (derogada 2017). Los hechos del presente caso ocurrieron vigente la derogada ley.

[5] Art. II, Sec. 7, Const. PR, LPRA, Tomo 1.

"un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo".[6]

En su vertiente sustantiva, el debido proceso de ley impide al Estado aprobar leyes o afectar los intereses de propiedad o libertad de un individuo de manera irrazonable, arbitraria o caprichosa.[7] Mientras, su vertiente procesal obliga al Estado a garantizar a los individuos que cualquier interferencia con sus intereses de propiedad o libertad se hará mediante un procedimiento justo y equitativo.[8]

Algunas de las garantías que conforman esta dimensión procesal del debido proceso de ley son: (1) **una notificación adecuada del proceso**; (2) un procedimiento ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar testigos y examinar la evidencia de la parte contraria; (5) la asistencia de un abogado; y (6) que la decisión se base en la evidencia presentada y admitida en el juicio.[9]

En lo pertinente al caso de marras, nadie duda que la correcta notificación de una **determinación final** de una agencia administrativa es una característica imprescindible del debido proceso ley.[10] Solo así pueden las partes advenir en conocimiento de lo resuelto, de modo que puedan solicitar oportunamente los remedios que en derecho consideren pertinentes y que tengan a su disposición.[11] Ahora bien, la determinación tiene que ser **final**, esto es, que resuelva todas las controversias entre las partes sin dejar alguna pendiente.[12]

---

[6] *Marrero Caratini* v. *Rodríguez Rodríguez*, 138 DPR 215 (1995).

[7] *Hernández* v. *Secretario*, 164 DPR 390, 394 (2005); *Domínguez* v. *ELA I*, 178 DPR 1, 38 (2010).

[8] *Calderón Otero* v. *CFSE*, 181 DPR 386, 398 (2011).

[9] *Hernández* v. *Secretario*, 164 DPR 390, 395-396 (2005); *Rivera Rodríguez & Co.* v. *Lee Stowell*, 133 DPR 881, 888-889 (1993).

[10] *Comisión Ciudadanos* v. *G.P. Real Property*, 173 DPR 998, 1014 (2008); *Rodríguez Mora* v. *García Llorens*, 147 DPR 305, 309 (1998); *Colón Torres* v. *A.A.A.*, 143 DPR 119, 124 (1997) (Énfasis nuestro).

[11] *Caro* v. *Cardona,* 158 DPR 592, 599 (2003).

[12] *AEE* v. Rivera, 167 DPR 201, 204 (2006) (citando a DEMETRIO FERNÁNDEZ QUIÑONES, DERECHO ADMINISTRATIVO Y LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME, 2da ed. rev., Bogotá, Ed. Forum, 2001, Sec. 9.3, pág. 533); *Tosado* v. *AEE,* 165 DPR 377 (2005).

Acorde con ello, la Sec. 3.14 de la Ley Núm. 170-1988,[13] exigía que las órdenes o resoluciones **finales** de las agencias administrativas cumplieran con lo siguiente:

> [I]ncluir y exponer separadamente el trámite procesal del caso, determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, y la disponibilidad del recurso de reconsideración, de apelación administrativa o de revisión judicial según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.
>
> La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia, presentar una apelación ante una agencia administrativa con jurisdicción, o de instar el recurso de revisión judicial ante el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos cronológicos correspondientes según dispuestos en esta Ley. Cumplido este requisito comenzarán a correr dichos términos cronológicos.[14]

B.

El inciso (a) del Art. 2.007 de la aludida Ley Núm. 81-1991, exigía que la persona natural o jurídica responsable de la obra radicara una *Declaración de Actividad* con el desglose de los costos de esta.[15] Además, el inciso (b) facultaba al Director de Finanzas a aceptar o rechazar el costo de la obra que surgía de la *Declaración de Actividad* como base para el cálculo del arbitrio de construcción correspondiente.[16] Es decir, que, el pago del arbitrio de construcción y someter la *Declaración de Actividad* son requisitos para poder iniciar la construcción.[17] Es por eso que, el Art. 2.007 (g) (1) dispone que, iniciar la obra sin acreditar el cumplimiento con los requisitos antes mencionados conlleva la imposición de sanciones, entre las que se encuentra la multa administrativa.[18] Dicho artículo lee como sigue:

> (g) Incumplimiento. — **El incumplimiento por parte de un contribuyente de presentar cualquiera de las declaraciones** y/o documentos requeridos para corroborar la información ofrecida o el ofrecer información falsa, a sabiendas de su falsedad en la Declaración de Actividad de Construcción, **así como el incumplimiento del pago del arbitrio, acompañada por la**

---

[13] 3 LPRA § 2164 (derogada 2017).
[14] *Id.*
[15] 21 LPRA § 4057 (a) (derogada 2020).
[16] *Id.* § 4057 (b) (derogada 2020).
[17] *Id.* § 4057 (c) (derogada 2020).
[18] *Id.* § 4057 (g) (1) (derogada 2020).

**realización de la actividad de construcción tributable, dará lugar a la aplicación de distintas sanciones**, a saber:

(1) Sanción administrativa. — Cuando el Director de Finanzas determine que el contribuyente ha incurrido en cualquiera de los actos mencionados en el primer párrafo de este inciso, luego de conceder una vista administrativa al efecto y de conformidad con el procedimiento establecido en la Ley de Procedimiento Administrativo Uniforme [Nota: Derogada y sustituida por la Ley 38-2017, "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"], de encontrarse probada la conducta imputada, procederá el Director de Finanzas al cobro de arbitrio, según corresponda, y a imponer al contribuyente una penalidad administrativa equivalente al doble del importe del arbitrio impuesto con los intereses correspondientes. Se concede un derecho de revisión al contribuyente respecto a la penalidad e intereses impuestos independiente a la revisión del arbitrio impuesto; por lo que el contribuyente deberá pagar el arbitrio impuesto antes de proceder a impugnar la penalidad o intereses impuestos. En este caso, el pago de la penalidad se efectuará una vez se ratifique la corrección de ésta por el Tribunal de Primera Instancia, bajo el procedimiento establecido en el Artículo 15.002 de esta Ley.[19]

IV.

Como adelantamos, Super Asphalt alega que las notificaciones de los avisos de deudas incumplieron con las garantías del debido proceso. Se refiere a las cartas cursadas por el Municipio de Cayey el 9 de junio de 2017 y el 19 de enero de 2018. Examinadas ambas notificaciones, justipreciamos que estas **no constituyeron una decisión final** sujeta al estricto cumplimiento de la Sec. 3.14 de la Ley Núm. 178-1988.[20] Nos explicamos.

La carta del 9 de junio de 2017 se limitó a avisar a Super Asphalt el desglose de la deuda de $203,047.27, dentro de la cual estaba contenida la penalidad de $131,609.04 por falta de pago de arbitrios de construcción previo al inicio de la obra, según requerido por los Arts. 2.002 y 2.007 de la Ley Núm. 81-1991.[21] Esta carta o comunicación no tuvo el efecto de iniciar o activar los términos de revisión, pues, más allá de expresar la disponibilidad del Municipio de Cayey en contestarle a Super Asphalt cualquier interrogante,[22] nada advirtió sobre su derecho a revisar el arbitrio, la

---

[19] 21 LPRA § 4057 (Énfasis nuestro).
[20] 3 LPRA § 2164 (derogada 2017).
[21] 21 LPRA § 4052; *Id.* § 4057 (derogada 2020).
[22] Apéndice del recurso, pág. 36 ("De tener alguna duda o pregunta con este requerimiento, favor de comunicarse al (787) 738-6126, 263-5385; 263-5045 o puede visitar nuestra oficina, ubicada en el Edificio de planificación ubicado en la Ave. José de Diego Oeste, Esq. Ave. Miguel Meléndez Muñoz").

penalidad y los intereses impuestos. Tampoco le advirtió sobre el procedimiento a seguir para cuestionar la penalidad avisada. Como dato importante, la cantidad reclamada a Super Asphalt por el Municipio de Cayey en este aviso fue luego ajustada a $204,500.46, al notificarse el *Aviso Final* el 19 de enero de 2018.

Esta segunda carta fechada 19 de enero de 2018, intitulada *Aviso Final,* además de avisarle sobre la deuda por concepto de arbitrios de construcción, advirtió a Super Asphalt que, de no satisfacer la misma, acarrearía penalidad del doble del importe del arbitrio. Dicha misiva impartió instrucciones sobre el procedimiento a seguir para cuestionar la penalidad avisada. Se hizo en cumplimiento con el mandato del Art. 2.007 (g)(1) de la Ley Núm. 81-1991. El arbitrio de construcción debió pagarse antes de iniciar la obra, y para esa fecha, la obra había sido culminada. Específicamente, dicha misiva expuso:

> Con relación a la penalidad de arbitrios por construcción, la Ley de Municipios Autónomos dispone que: "Se concede un derecho de revisión al contribuyente respecto a la penalidad e intereses impuestos independiente a la revisión del arbitrio impuesto; por lo que el contribuyente deberá pagar el arbitrio impuesto antes de proceder a impugnar la penalidad o intereses impuestos." Deseamos que, para otorgarle la vista administrativa solicitada, deberá pagar la cantidad de $72, 891.42 dólares.[23]

Nótese, que, con ninguna de estas cartas el Municipio de Cayey tuvo el propósito de notificarle a Super Asphalt un dictamen final sobre la penalidad. Como cuestión de realidad, tras celebrar la vista administrativa correspondiente a petición de Super Asphalt, el 15 de abril de 2021 el Departamento de Finanzas del Municipio de Cayey dictó *Resolución* consignando lo siguiente:[24]

> El Art. 2.002 (d) de la Ley de Municipios Autónomos (LMA) faculta al Municipio a imponer los arbitrios de construcción en cuestión. En lo pertinente establece dicho Articulado que:
> > "Toda obra de construcción dentro de los límites territoriales de un municipio, realizada por una persona natural o jurídica privada, o que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o Municipal

---

[23] Apéndice del recurso, pág. 38 (Énfasis nuestro) (El Tribunal de Primera Instancia encontró suficiente en derecho lo antes citado para apercibir a Super Asphalt de su derecho de revisión).

[24] Apéndice del recurso, págs. 16-22.

o del Gobierno Federal, incluyendo aquella obra que no requiera la solicitud o expedición de un permiso por la Administración de Reglamentos y Permisos o por un municipio autónomo, deberá pagar arbitrio de construcción correspondiente, previo al comienzo de dicha obra".

A base de este mandato, más adelante en la LMA, se establece el procedimiento que debe seguir un contribuyente para el pago de los arbitrios. En lo particular el Art. 2.007 (a) establece que es el Contribuyente el que tiene, en primera instancia, la obligación de acudir al Municipio a presentar una declaración de obra.

. . . .

**Como vemos, el incumplimien[t]o que da base a la imposición de la penalidad es aquel que ocurre cuando e[l] contribuyente comienza la obra sin haber presentado su declaración de obra y efectuar el pago correspondiente, junto con el acto voluntario de haber comenzado la construcción.**

**En el presente caso el contribuyente incumplió con ambos requisitos establecidos en LMA, esto es (1) comenzó, y de hecho la concluyó, una obra de construcción dentro del Municipio; (2) efectuó la misma antes de presentar su declaración de obra y pagar el arbitrio correspondiente.**

**Ante este cuadro, procede la imposición de la penalidad**.[25]

En fin, las mencionadas cartas no equivalen a órdenes o resoluciones finales que, a tenor con la Sec. 3.14, tienen que cumplir con las garantías procesales al ser notificadas.[26]

Aun si, para fines de argumentación, el Municipio de Cayey notificó a Super Asphalt la imposición de la penalidad a través de estas misivas sin adherirse estrictamente a lo dispuesto en el Art. 2.007 (g)(1) de la Ley 81-1991,[27] ello no tuvo efectos sobre el debido proceso de ley de Super Asphalt.

Según las constancias del expediente, al menos desde el 9 de febrero de 2016, Super Asphalt conocía que se le adjudicó el contrato del *Proyecto* por la cantidad de $1,096,742.00, incluyendo los arbitrios de construcción y patente municipal. Aun así, según resultó probado en la vista administrativa celebrada el 12 de abril de 2021, Super Asphalt **no emitió el pago del arbitrio de construcción previo al inicio de la obra y sí, transcurridos**

---

[25] *Id.*, pág. 20 (Continuación de las determinaciones de la *Resolución*: "Ahora, el contribuyente durante la vista administrativa tampoco ofreció testimonio o documento alguno que justifique la dilación en el pago del arbitrio, que de alguna manera fuese razón para permitirle, **dentro de la discreción que tiene el Director de Finanzas, dejar sin efecto la imposición de la penalidad**".). (Énfasis nuestro).

[26] 3 LPRA § 2164 (derogada 2017).

[27] 21 LPRA § 4057 (derogada 2020).

**395 días de haber terminado la misma, no sin antes habérselo requerido el Municipio**. Además, Super Asphalt tampoco acreditó la presentación de la *Declaración de Actividad,* según mandata la Ley Núm. 81-1991. Específicamente, en la vista administrativa llevada a cabo, Super Asphalt no ofreció testimonio o documento alguno que justificara su dilación en la radicación de la *Declaración de Actividad* o del pago del arbitrio de construcción.[28] Quedo así debidamente demostrado su incumplimiento como contribuyente.

Finalmente, en cuanto a la debida notificación de la sanción, la *Resolución* emitida por el Oficial Examinador del Municipio de Cayey el 15 de abril de 2021, **constituyó una determinación final** susceptible de revisión y, por tanto, debía cumplir con la Sec. 3.14 y las garantías del debido proceso de ley.[29] La referida *Resolución* informó adecuadamente a Super Asphalt de su derecho a solicitar reconsideración o revisión judicial y advirtió adecuadamente de los términos correspondientes para hacerlo. De igual forma la *Resolución* citó las disposiciones legales pertinentes y certificó que una copia fue notificada por correo electrónico y por correo certificado con acuse de recibo. De esta forma el Municipio de Cayey cumplió con las exigencias del debido proceso de ley al reclamarle a Super Asphalt el pago de arbitrios que entendió procedente e imponerle la multa que estimó correspondiente. El primer error no se cometió.

V.

En su segundo señalamiento de error, Super Asphalt sostiene que el Tribunal de Primera Instancia incidió al confirmar el cobro de los arbitrios de construcción y de la penalidad que le impuso el Municipio de Cayey. Argumenta, en síntesis, que la ACT, como corporación pública, está exenta estatutariamente del pago del arbitrio de construcción y que dicha exención se extendía a Super Asphalt como su contratista, por disposición expresa, tanto de la *Ley de la Autoridad de Carreteras y Transportación de Puerto Rico,*

---

[28] Apéndice del recurso, págs. 16-22.
[29] *Picorelli López* v. *Depto. de Hacienda*, 179 DPR 720 (2010).

Ley Núm. 74 de 23 de junio de 1965, según enmendada,[30] como de la Ley Núm. 81-1991.[31] No tiene razón. Veamos por qué.

Controversias similares han sido objeto de múltiples litigios y continúan provocando desavenencias entre foros de los distintos niveles jerárquicos. Repasemos, pues, los estatutos aplicables y la forma en que han sido interpretados estos estatutos por los foros apelativos al atender en el pasado cuestionamientos sobre la imposición de arbitrios de construcción por parte de los municipios.

A.

*A priori*, exponemos los principios de interpretación que rigen la función adjudicativa de la presente controversia.

En materia de hermenéutica legal, sabido es que, "[l]a interpretación judicial debe propiciar la realización del verdadero propósito de la ley".[32] El Art. 19 del Código Civil de Puerto Rico de 2020, dispositivo de las reglas para la interpretación legal establece que, "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu".[33] Por lo anterior, los tribunales sólo estamos "autorizados a interpretar las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma, o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere".[34] Empero, cuando el legislador se ha manifestado en "un lenguaje claro e inequívoco, el texto de la ley representa la expresión por excelencia de la intención legislativa".[35]

Otro principio de interpretación importante consiste en que las disposiciones de una ley "deben ser examinadas e interpretadas de modo que

---

[30] 9 LPRA § 2001 *et seq.*
[31] 21 LPRA § 4001 *et seq.* (derogada 2020).
[32] *Díaz Marín* v. *San Juan*, 117 DPR 334, 342-343 (1986) (haciendo referencia a E.R. BERNIER, APROBACIÓN E INTERPRETACIÓN DE LAS LEYES EN PUERTO RICO, San Juan, Colegio de Abogados, 1963, Cap. XLVIII, pág. 230).
[33] 31 LPRA § 5341.
[34] *Asoc. FCIAS* v. *Caribe Specialty II*, 179 DPR 923, 939 (2010) (citando a *Pueblo* v. *Ortega Santiago*, 125 DPR 203, 214 (1990)).
[35] *Bco. Santander* v. *Correa García*, 196 DPR 452, 467 (2016).

no conduzcan a resultados irrazonables e insostenibles, sino armoniosos".[36] Resulta necesario que en nuestra interpretación armonicemos, hasta donde sea posible, todas las disposiciones de la ley con el propósito de lograr una interpretación integrada, lógica y razonable de la intención legislativa y de la política pública que la inspira.[37]

El Art. 1.004 de la *Ley de Municipios Autónomos* proveía su propia norma de interpretación. Disponía:

> Los poderes y facultades conferidos a los municipios por esta ley o cualquier otra ley, excepto disposición en contrario, se interpretarán liberalmente, en armonía con la buena práctica de política pública fiscal y administrativa, **de forma tal que siempre se propicie el desarrollo e implantación de la política pública enunciada en esta ley de garantizar a los municipios las facultades necesarias en el orden jurídico, fiscal y administrativo para atender eficazmente las necesidades y el bienestar de sus habitantes**.[38]

De manera similar, el Art. 1.003 la Ley 107 del 13 de agosto de 2020, conocida como el *Código Municipal de Puerto Rico*, (Código Municipal o Ley Núm. 107-2020)[39] declara como "[m]áximo interés público que los municipios cuenten con **los recursos necesarios para rendir sus servicios**. Se dispone, por ende, que todas las ramas de Gobierno deberán proteger las fuentes de recursos municipales y que las facultades tributarias municipales se interpretarán liberalmente a favor del pueblo representado por el municipio".[40] Su Art. 1.005, reitera la interpretación a favor de los municipios en aras de propiciar su política pública de garantizarles las facultades necesarias para atender eficazmente las necesidades y el bienestar de sus habitantes.[41]

Vale recordar las expresiones de nuestro Tribunal Supremo respecto a que la contratación gubernamental de servicios está revestida del más alto

---

[36] *San Gerónimo Caribe Project* v. *Registradora*, 189 DPR 849, 869 (2013) (citando a *Domínguez Castro* v. *ELA*, 178 DPR 375, 409 (2010)).
[37] *Spyder Media, Inc.* v. *Municipio de San Juan*, 194 DPR 547, 555-556 (2016); *Matos* v. *Junta Examinadora*, 165 DPR 741, 748-749 (2005); *Caribe Comms., Inc.* v. *PRTC*, 157 DPR 203, 211 (2002).
[38] 21 LPRA § 4002 (derogada 2020) (Énfasis nuestro).
[39] 21 LPRA § 7001 *et seq.*
[40] *Id.* § 7003.
[41] *Id.* § 7005.

interés público, pues persigue fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado.[42]

B.

Con estos parámetros de interpretación legal debidamente definidos, examinemos la doctrina jurídica pertinente.

Como sabemos, la Constitución del Estado Libre Asociado de Puerto Rico establece la facultad de imponer contribuciones sobre la Asamblea Legislativa. Dispone que, "[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido".[43] Aunque los municipios no tienen un poder inherente e independiente del Estado para imponer contribuciones,[44] la Asamblea Legislativa puede delegar en ellos, mediante mandato claro y expreso, la autoridad para imponer y cobrar contribuciones, derechos, arbitrios e impuestos razonables dentro de sus límites territoriales y sobre materias no incompatibles con la tributación impuesta por el Estado.[45]

Así lo dispuso el Legislador al promulgar en el 1991 la Ley de Municipios Autónomos.[46] Esta Ley se creó con el propósito de garantizar a los municipios la autonomía fiscal y gobierno propio para atender con mayor eficacia las necesidades de sus habitantes.[47] Como parte de la política pública, se le reconoció a todo municipio autonomía en el orden jurídico, económico y administrativo, lo que incluía la libre administración de sus bienes, disposición de sus ingresos y la forma de recaudarlos e invertirlos.[48] Consecuentemente, la Ley de Municipios Autónomos facultó a los ayuntamientos municipales a imponer y cobrar contribuciones, derechos,

---

[42] *ECA General Contractors, Inc.* v. *Mun. de Mayagüez*, 200 DPR 665, 672 (2018) (citando a *Aut. Carreteras* v. *CD Builders, Inc.*, 177 DPR 398, 404 (2009)).

[43] Art. VI, Sec. 2, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 435.

[44] *ECA General Contractors, Inc.* v. 200 DPR, pág. 675 (citando a *Levy, Hijo* v. *Mun. de Manatí*, 151 DPR 292, 299 (2000)); *Ortiz* v. *Municipio San Juan*, 167 DPR 609, 613 (2006).

[45] *Interior Developers* v. *Mun. de San Juan*, 177 DPR 693, 703 (2009); *Café Rico, Inc.* v. *Mun. de Mayagüez*, 155 DPR 548, 553 (2001).

[46] 21 LPRA § 4001 *et seq.* (derogada 2020).

[47] Véase Exposición de Motivos de la Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81-1991 (1991 [Parte 1] LPR 460); Véase también *Const. Jose Carro* v. *Mun. Dorado*, 186 DPR 113, 121 (2012).

[48] 21 LPRA § 4004 (derogada 2020).

licencias, arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables, dentro de los límites territoriales del municipio a través de ordenanzas municipales.[49]

Posteriormente, esta Ley de Municipios Autónomos fue objeto de varias enmiendas, entre ellas, la Ley Núm. 130 de 10 de junio de 1998.[50] Esta legislación enmendatoria aclaró que la intención legislativa era que, incluso "aquella obra que no requiera la solicitud o expedición de un permiso por la Administración de Reglamentos y Permisos o por un municipio autónomo, deberá pagar arbitrios de construcción".[51] Conforme a las expresiones contenidas en la Exposición de Motivos de la precitada Ley Núm.130-1998:

> [L]a exención otorgada por Ley Núm. 199, antes citada, no se extiende a las personas naturales o jurídicas privadas creadas al amparo de las leyes que las rigen, **excepto cuando la ley así lo disponga explícitamente;** por lo que tampoco es correcto asumir que las protecciones constitucionales y la ley que cobijan a las agencias estatales, corporaciones públicas y municipios, al Gobierno Federal, se extienden automáticamente a una persona natural o jurídica privada que contrate con estas para realizar obras de construcción.
> . . . .
> La enmienda propuesta por la Ley tiene como propósito asegurar que todo contratista que realice una obra pública del Gobierno Central, **pague** el arbitrio de construcción correspondiente en el municipio en donde se lleve a cabo dicha obra, previo al comienzo de la misma. **Con esta disposición, la Asamblea Legislativa reafirma la facultad cedida por Ley a los municipios de allegar fondos a sus respectivos Gobiernos Municipales para sufragar los servicios que otorgan a sus ciudadanos.**[52]

Subsiguientemente, la Ley de Municipios Autónomos fue derogada y sustituida por el Código Municipal de 2020. Este nuevo estatuto, igualmente faculta a las entidades municipales a imponer y cobrar los arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables, dentro de los límites territoriales del municipio a través de ordenanzas municipales.[53] Bajo el palio de su Art. 2.109,[54] **toda obra de construcción**

---

[49] *Id.* § 4001; *Id.* § 4052 (derogada 2020); *HBA Contractors* v. *Mun. de Ceiba,* 166 DPR 443, 454 (2005).
[50] 21 LPRA § 4052 (derogada 2020).
[51] Exposición de Motivos de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, Ley Núm. 130-1998 (1998 [Parte 1] LPR 538).
[52] *Id.*
[53] 21 LPRA § 7331; *Id.* § 8351.
[54] *Id.* § 7331.

**realizada por una persona natural o jurídica dentro de los límites territoriales municipales deberá pagar el arbitrio de construcción que corresponda, previo al comienzo de dicha obra, a tenor con las ordenanzas aplicables.**

El Art. 1.003 (cc) de la derogada Ley de Municipios Autónomos, definía *arbitrio de construcción* como "aquella contribución impuesta por los municipios a través de una ordenanza municipal aprobada con dos terceras partes para ese fin, la cual recae sobre el derecho de llevar a cabo una actividad de construcción o una obra de construcción dentro de los límites territoriales del municipio".[55] Además, *actividad de construcción* se definía como "el acto o actividad de construir, reconstruir, ampliar, reparar, demoler, remover, trasladar o relocalizar cualquier edificación, obra, estructura, casa o construcción de similar naturaleza fija y permanente, pública o privada, realizada entre los límites territoriales de un municipio".[56]

De cardinal importancia para la resolución de la controversia ante nos, el Art. 2.007 (f) de la Ley de Municipios Autónomos, declaraba exentas de pagar el referido arbitrio a:

> [A]quellas obras hechas mediante el método conocido como administración, es decir, como parte de los programas de construcción de una agencia del Gobierno Central o sus instrumentalidades, una corporación pública, un municipio o una agencia del Gobierno Federal. **No obstante, esta exención no aplica a las obras de construcción llevadas a cabo por una persona natural o jurídica privada, actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia[57] o instrumentalidad del Gobierno Central[58] o Municipal.** Tampoco aplica dicha exención cuando se trate de obras de construcción llevadas a cabo por una persona natural o jurídica privada actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia del Gobierno

---

[55] 21 LPRA § 4001 (derogada 2020).

[56] *Id.* (Al enmendarse la Ley Núm. 81-1991 por la Ley 50 del año 2018, 21 LPRA § 4052, la definición de "actividad de construcción" del Art. 1.003 (dd), no sufrió grandes cambios, sino que se sustituyeron las palabras "ampliar" y "demoler" por "remodelar" y "reparar").

[57] El Art. 1.003 de Ley Núm. 81-1991 define como *agencia pública* "cualquier departamento, negociado, administración, oficina, comisión junta, tribunal examinador, cuerpo, programa, autoridad, entidad, **corporación pública** y subsidiaria de ésta, **instrumentalidad** e institución de la Rama Ejecutiva del Gobierno del Estado Libre Asociado de Puerto Rico, incluyendo la Oficina propia del Gobernador". 21 LPRA § 4001 (derogada 2020) (Énfasis nuestro).

[58] Por su parte, *Gobierno central,* "significará el Gobierno del Estado Libre Asociado de Puerto Rico, sus **agencias públicas, instrumentalidades** y subdivisiones políticas, excluyendo la Rama Legislativa y la Rama Judicial". *Id.* (Énfasis nuestro).

Federal, cuando las leyes o reglamentos federales aplicables así lo permitan.[59]

De esta disposición y las definiciones que anteceden se colige que, **la exención reconocida a la entidad gubernamental o corporación pública "no aplica a las obras de construcción ejecutadas por una persona natural o jurídica privada**, actuando a favor o en representación de **o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o Municipal"**.[60]

En este punto, vale destacar el mandato del inciso (5) del Art. 1.007 del nuevo Código Municipal de Puerto Rico, de que "[n]o se eximirá, total o parcialmente, ni se prorrogará el pago de las contribuciones, patentes y tasas municipales a persona natural o jurídica alguna, salvo que por este Código **o por ley se disponga o autorice expresamente tal exención**, o se autorice tal prórroga mediante ordenanza al efecto".[61]

Como antes indicamos, el Tribunal Supremo de Puerto Rico ha tenido que atender múltiples controversias relacionadas a la procedencia o no, de la imposición y el cobro de arbitrios de construcción por parte de los municipios. En *Interior Developers* v. *Mun. de San Juan*, 177 DPR 693 (2009), resolvió que la Ley de Municipios Autónomos no contemplaba el cobro de arbitrios de construcción a una empresa que contratase con la Rama Legislativa para realizar una obra de construcción en el Capitolio. Fundamentándose en el Art. 2.002 (d) de la anterior Ley Núm. 81-1991,[62] el Tribunal Supremo reiteró que el surgimiento de la obligación tributaria del contribuyente para con el municipio depende de: (1) que se trate de una obra de construcción; (2) que esté dentro de los límites territoriales del municipio, y (3) que sea realizada por una persona natural o jurídica privada, o una persona natural o jurídica

---

[59] 21 LPRA § 4057 (derogada 2020) (Énfasis suplido).

[60] *Id.* § 4057 (derogada 2020).

[61] 21 LPRA § 7012 (Énfasis nuestro).

[62] 21 LPRA § 4052 ("Toda obra de construcción dentro de los límites territoriales de un municipio, realizada por una persona natural o jurídica privada, o que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una *agencia o instrumentalidad del Gobierno Central o municipal o del gobierno federal*, incluyendo aquella obra que no requiera la solicitud o expedición de un permiso por la Administración de Reglamentos y Permisos o por un municipio autónomo, deberá pagar el arbitrio de construcción correspondiente, previo al comienzo de dicha obra".) (derogada 2020).

privada contratada por una agencia o dependencia del Gobierno Central, municipal o federal.[63] Dentro de esos contornos, nuestro Alto foro dedujo que, al analizar si un municipio está facultado para cobrar el arbitrio de construcción correspondiente, se debe considerar: (1) el tipo de obra realizada; (2) su localización; y (3) a quién pertenece la obra.[64]

El Tribunal Supremo explicó que, conforme a la definición de "contribuyente" contenida en el Art. 1.003 (ee) de la Ley Núm. 81-1991,[65] existen dos posibles escenarios. Por un lado, puede ser contribuyente "la persona que sea dueña de la obra y que personalmente la ejecute".[66] Por otro lado, también puede ser contribuyente la persona que "sea contratada para realizar la construcción, que a su vez podrá pasar el costo al dueño de la obra".[67] Destacó que, en cuanto al requisito del dueño de la obra, la definición de "Gobierno Central" ofrecida por la Ley Núm. 81-1991[68] excluía expresamente a la Rama Legislativa y la Rama Judicial.[69] Por ello concluyó que, aunque se trataba de una obra de construcción dentro de los límites territoriales del Municipio de San Juan, el dueño de la obra era la Rama Legislativa, faltando por tanto, el requisito esencial de que la obra fuera realizada por una persona natural o jurídica privada, o por una persona natural o jurídica privada contratada por una agencia o dependencia del *Gobierno Central, municipal o federal.*[70] Evidentemente, la Asamblea Legislativa no estaba en el grupo al que aplicaba la disposición de ley.

En *Cooperativa de Ahorro y Crédito de Rincón* v. *Mun. Mayagüez*, 200 DPR 546 (2018), se analizó por primera vez la extensión o alcance de la exención de pagos de arbitrios de contribución a la luz de la ley orgánica de la entidad gubernamental en controversia, más allá de la disposición contenida en la Ley de Municipios Autónomos. En este caso, una compañía

---

[63] *Interior Developers* v. *Mun. de San Juan*, 177 DPR 693, 705 (2009).
[64] *Id.*
[65] *Id.*, pág. 706.
[66] *Id.*
[67] *Id.*
[68] 21 LPRA § 4001 (derogada 2020).
[69] *Interior Developers* v. 177 DPR, pág. 712.
[70] *Id.*, pág. 713.

que contrató la realización de una obra de construcción con una Cooperativa, solicitó al Municipio donde estaba localizada la obra, que le eximiera de los arbitrios de construcción. Basó su petición en lo dispuesto en el Art. 6.08(a)(3) de la Ley de Cooperativas.[71] Este textualmente dispone:

> Las cooperativas y sus subsidiarias o afiliadas estarán exentas del pago de derechos, **arbitrios o aranceles estatales o municipales**, incluyendo el pago de cargos por licencias, patentes, permisos y registros, del pago de cargos, derechos, sellos o comprobantes de rentas internas relativos al otorgamiento de toda clase de documentos públicos y privados, del pago de cargos, derechos, sellos o comprobantes de rentas internas relativos a la inscripción de los mismos en el Registro de la Propiedad o cualquier otro registro público u oficina gubernamental y del pago de cargos, derechos, sellos o comprobantes de rentas internas relativos a la expedición de certificaciones por dichos registros o por cualquier otra oficina gubernamental. Las cooperativas y sus subsidiarias o afiliadas estarán exentas, además, del pago de cargos, derechos, sellos o comprobantes de rentas internas, arbitrios o aranceles requeridos en el Tribunal General de Justicia de Puerto Rico o por cualquier agencia, instrumentalidad, corporación pública del Estado Libre Asociado de Puerto Rico o cualquier subdivisión política de éste.[72]

Allí, nuestro Alto foro judicial resolvió que, el "lenguaje sumamente abarcador ilustrativo de una intención legislativa contra el ejercicio del poder tributario sobre las cooperativas",[73] impedía interpretar que la exención solamente aplicaba a los arbitrios que los municipios les cobran directamente a las cooperativas, pues ello no considera que, eran las cooperativas las que terminarían pagando los arbitrios.[74]

Nótese, que el aludido estatuto expresamente **incluyó los arbitrios municipales** entre los pagos que las cooperativas no tenían que satisfacer. Por ello, distinto a otros casos, la extensión de la exención del pago de los arbitrios de construcción aplicable a la dueña de la obra, concedida en este caso por *fiat* judicial a la persona jurídica privada que contrató con esta para realizarla, se hizo **a modo de excepción,** pues, la disposición que la regula lo hizo posible.

---

[71] Ley de Sociedades Cooperativas de Ahorro y Crédito de 2002, Ley Núm. 255-2002, 7 LPRA § 1366 g.
[72] 7 LPRA § 1366 g(a)(3).
[73] *Coop. Ahorro Rincón* v. *Mun. Mayagüez*, 200 DPR 546, 560 (2018).
[74] *Id.*

El Tribunal Supremo en *Municipio de Utuado* v. *Aireko Construction Corp.*, 176 DPR 897 (2009) **validó la imposición de arbitrios de construcción a un contratista que contrató una obra de construcción con la Autoridad de Edificios Públicos en el Municipio de Utuado.** En dicho caso, con hechos similares al caso que hoy dilucidamos, una persona jurídica privada que contrató la realización de una obra de construcción con una instrumentalidad gubernamental, pagó sin cuestionar los arbitrios de construcción al Municipio. En dicho caso, **lejos de reconocer una extensión de la exención del pago de arbitrios de construcción a la compañía privada por haber subcontratado con una entidad o agencia de gobierno exenta, el Tribunal Supremo solo aclaró, que el arbitrio de construcción recae sobre la obra, por lo que, el mero cambio de contratista no requería imponer otro arbitrio de construcción sobre la misma**. Este dictamen buscó evitar la doble tributación de arbitrios de construcción cuando el contratista original es sustituido luego de haber iniciado la obra.

En *Río Construction Corp.* v. *Municipio de Carolina*, 153 DPR 615 (2001), el Tribunal Supremo interpretó que la Ley de Municipios Autónomos,[75] exigía el pago de arbitrios municipales a las empresas privadas contratadas por los gobiernos municipales para realizar una actividad de construcción, aun cuando se le exima de obtener un permiso de ARPE.[76] Específicamente, el Tribunal sostuvo lo siguiente:

> En vista que la intención legislativa claramente pretende ampliar las facultades contributivas de los municipios, y que la propia Ley Núm. 199, *supra* **no exime del pago de arbitrios a entidades que contraten con el gobierno**, Río Construction debe pagar los arbitrios adeudados al Municipio. . . En otras palabras, el referido Articulo 2.007(f) hace clara distinción que, **aunque la entidad gubernamental pueda estar exenta** de pagar arbitrios de construcción, por administración y con su propio personal, **este relevo de obligaciones no se extiende a**

---

[75] 21 LPRA § 4001 *et. seq.* (derogada 2020).
[76] En este caso, la Autoridad de Carreteras de Puerto Rico contrató a una corporación privada para construir un puente en el Municipio de Carolina. Tras el Municipio facturarle los arbitrios de construcción correspondientes, la Corporación se opuso aduciendo que la Ley Núm. 199 de 6 de septiembre de 1996, le eximía de pagar los arbitrios reclamados. Se refirió a que la mencionada Ley excluía "del pago de los arbitrios a los proyectos que no necesitaban obtener un permiso de la Administración de Reglamentos y Permisos". *Río Construction Corp.* v. *Municipio de Carolina*, 153 DPR 615, 618 (2001).

**entidades que contraten con el gobierno**. **La referida entidad, por ende, tiene que pagar arbitrios de construcción**.[77]

En este Foro intermedio de Apelaciones son variadas las interpretaciones que hemos dado a las normas jurídicas expuestas. En *Aireko* v. *Municipio de Moca,* KLAN201801275, este Tribunal de Apelaciones resolvió que contratistas de la Compañía de Fomento Industrial de Puerto Rico (PRIDCO) están exentos del arbitrio de construcción. Se fundó en que, igual que interpretó el Tribunal Supremo en *Coop. Ahorro Rincón* v. *Mun. Mayagüez,* supra, la amplia exención a favor de PRIDCO[78] era extensible a Aireko. Según el Panel, lo contrario sería limitar la exención contributiva concedida a PRIDCO de una manera que no es acorde a la intención legislativa y limitaría su función y razón de ser para el importante fin público de promover el desarrollo económico. Añadió, que, resolver que Aireko no estaba exento del pago de los arbitrios de construcción que el Municipio le reclamó, burlaría la intención legislativa de eximir a PRIDCO e indirectamente a Aireko del pago de arbitrios de construcción municipales.

En cambio, en *Municipio de Maunabo* v. *Cobra Acquisitions, LLC.,* KLAN202300022, un Panel hermano resolvió que, si bien era cierto que la Autoridad de Energía Eléctrica (AEE) estaba exenta del pago de contribuciones sobre, entre otras cosas, sus actividades en la explotación y conservación de cualquier empresa, o sobre los ingresos derivados de cualesquiera de sus empresas y actividades, o sobre su volumen de negocios,

---

[77] *Id.*, págs. 620-621 (Uno de los fundamentos del Tribunal Supremo en este caso fue el último párrafo del Art. 2.007 (f) bajo la Ley Núm. 199-1996 el cual disponía que: "[s]e exime del pago de este arbitrio [de construcción] toda actividad de construcción que realice por administración, con su propio personal, cualquier agencia o instrumentalidad del Gobierno Central. . . y del Gobierno Municipal. **Entendiéndose, que cuando una agencia contrate este tipo de actividad, <u>no podrán acogerse a esta exención</u>**".) (Énfasis en el original).

[78] En lo pertinente, dispone:

[L]a Compañía de Fomento Industrial de Puerto Rico y cualesquiera subsidiarias organizadas por ella, o que se organizaren en el futuro, al amparo de lo dispuesto en la sec. 278 de este título, no serán requeridas para pagar contribuciones o impuestos estatales o municipales, sobre ninguna de las propiedades adquiridas por ella, o por cualquiera de ellas, o bajo su jurisdicción, dominio o posesión, o sobre sus actividades en la explotación o conservación de cualquiera de sus empresas y actividades. Las rentas, intereses o ingresos producidos por los bonos y cualesquiera otras obligaciones que emita la Compañía de Fomento Industrial de Puerto Rico o sus subsidiarias, o cualquiera de ellas, estarán igualmente exentas de toda clase de contribuciones o impuestos estatales, municipales o del Gobierno de la Capital [...]. 23 LPRA § 303.

según disponía la Sección 22 de la su Ley habilitadora, la compañía contratada -Cobra-, no lo estaba.[79]

Más reciente, en *Lord Construction* v. *Mun. San Juan*, KLAN202300577, resolvimos extender la exención concedida a la AEE en virtud de su estatuto habilitador[80] a la compañía contratante, Lord Constructions. Aplicando por analogía lo resuelto en *Cooperativa de Ahorro de Rincón* v. *Mun. Mayagüez*, supra, concluimos que, debido a que el arbitrio de construcción recae sobre la obra, y no sobre la persona que la realiza, al ser la Autoridad una corporación pública exenta del pago de los arbitrios la dueña de esta, el Municipio no puede requerirle el pago de los arbitrios de construcción a Lord; esto porque no nace la obligación de pago de arbitrios de construcción. Añadimos que, interpretar lo contrario frustraría la intención legislativa de otorgarle la exención contributiva a la Autoridad, pues es ésta quien en última instancia viene obligada a pagar dicho arbitrio.

Como puede apreciarse, el análisis de si un municipio está facultado para cobrar arbitrios de construcción, no se limita a si se trata de una obra de construcción realizándose dentro de los límites territoriales del municipio por persona natural o jurídica privada contratada por una agencia o dependencia del Gobierno Central, municipal o federal. También es necesario cotejar si la entidad gubernamental concernida está eximida por disposición de ley y de estarlo, cuál es el alcance de la exención particular, según el lenguaje del estatuto.

Caso tras caso, nuestro Tribunal Supremo ha examinado la intención legislativa de cada ley habilitadora o de la medida aplicable para determinar si la exención contributiva de la entidad contratante en particular cobija a aquellas personas contratadas o subcontratadas para realizar la obra de

---

[79] *Lord Construction* v. *Mun. San Juan*, KLAN202300577, en la pág. 11 (11 de agosto de 2023).
[80] La Sección 22(a), establecía:
   [L]a Autoridad no será requerida para pagar ningunas contribuciones estatales o municipales, o impuestos de cualquier tipo sobre ninguna de las propiedades muebles e inmuebles adquiridas por ella o bajo su potestad, dominio, posesión o inspección, o sobre sus actividades en la explotación y conservación de cualquier empresa, o sobre los ingresos derivados de cualesquiera de sus empresas y actividades, o sobre su volumen de negocios.

construcción.[81] En otras palabras, el análisis incluye la evaluación de la ley habilitadora de la agencia o entidad gubernamental para determinar si, contrario a lo que dispone la Ley de Municipios Autónomos, ahora Código Municipal de 2020, las personas naturales o jurídicas privadas que contraten con esta, también está eximida del pago de arbitrios.

Al acometer dicha tarea, es evidente la gran diferencia entre el lenguaje de la Ley de Cooperativas en el caso de *Cooperativa de Ahorro de Rincón* v. *Mun. Mayagüez*, supra, y el lenguaje de la Ley de la Autoridad de Carreteras y Transportación de Puerto Rico, Ley Núm. 74 de 23 de junio de 1965[82] (Ley de la ACT), en cuanto a la exención de dicha corporación pública en el pago de alguna contribución o arbitrio.

Como vimos, en el Art. 6.08(a)(3) de la Ley de Cooperativas, clara y expresamente el legislador eximió a las cooperativas del pago de arbitrios o aranceles estatales o municipales.[83] Se trató de una limitación expresa de la Asamblea Legislativa al alcance de la autoridad tributaria de los municipios con un lenguaje sumamente abarcador, demostrativo de la intención legislativa contra el ejercicio del poder tributario sobre las cooperativas. Fue por ello que, el Tribunal Supremo concluyó que, la exención contributiva aplicaba a las obras de construcción que realizan las cooperativas, independientemente las encargaron a un contratista o las realizaran las propias cooperativas.

Ese no es el caso de la exención dispuesta en la Ley habilitadora de la ACT.[84] Esta dispone lo siguiente:

> (a) Por la presente se resuelve y declara que los fines para los que la Autoridad sea creada [sic] y debe ejercer sus poderes son: el mejoramiento del bienestar general, y el aumento del comercio y la prosperidad, y son todos ellos propósitos públicos para beneficio del pueblo de Puerto Rico en todo sentido y por tanto, la Autoridad no será requerida para pagar ningunas contribuciones o impuestos sobre **ninguna de las propiedades adquiridas** por ella o **bajo su potestad, dominio, posesión o inspección**, o sobre sus **actividades en la explotación y conservación** de cualesquiera facilidad de tránsito o de

---

[81] Véase *Interior Developers* v. *Mun. de San Juan*, 177 DPR 693 (2009); *Cooperativa de Ahorro y Crédito de Rincón* v. *Mun. Mayagüez*, 200 DPR 546 (2018).
[82] 9 LPRA § 2002.
[83] 7 LPRA § 1366g(a)(3).
[84] 9 LPRA § 2004a.

transportación o sobre los **ingresos derivados** de cualquiera de sus empresas y actividades.

(b) La Autoridad estará también exenta del pago de toda clase de derechos, contribuciones o impuestos hasta el presente o posteriormente requeridos por ley **para la prosecución de un procedimiento judicial, la emisión de certificaciones en todas oficinas y dependencias del Estado Libre Asociado de Puerto Rico, y la ejecución de documentos públicos y su registro en cualquier registro público de Puerto Rico**.

(c) Con el propósito de facilitar a la Autoridad la gestión de fondos que le permitan realizar sus fines corporativos, **los bonos emitidos por la Autoridad y las rentas que de ellos se devenguen**, estarán y permanecerán en todo tiempo exentos de contribución sobre ingresos.[85]

Fíjese, que, a pesar de que la Ley habilitadora de la ACT establece que dicha Corporación tiene facultad de contratar con entidades privadas, el legislador enumeró específicamente aquellas áreas exentas del pago de contribuciones, y **no incluyó dentro de ellas, los arbitrios de obras de construcción contratadas por entidades privadas**. Según el inciso (a), la ACT no paga contribuciones o impuestos **sobre sus propiedades** o las que tenga bajo su potestad, dominio, posesión o inspección. Tampoco se le podrá cobrar contribuciones sobre **cualquier actividad que realice en sus facilidades** de tránsito o de transportación ni sobre los ingresos derivados de cualquiera de sus empresas y actividades. El inciso (b) exime a la ACT del pago de cualquier **derecho, contribución o impuesto relacionados con procedimientos judiciales**, emisión de certificaciones en oficinas y dependencias del Gobierno de Puerto Rico. Inclusive, la ejecución de documentos públicos y su registro en cualquier registro público de Puerto Rico. Finalmente, la exención del inciso (c) aplica a **los bonos** emitidos por la Autoridad y las rentas que de ellos se devenguen.

De manera que, al comparar estas disposiciones, nos parece que, contrario a la Ley de Cooperativas objeto de análisis en el caso de *Cooperativa de Ahorro de Rincón* v. *Mun. Mayagüez,* supra, la Ley de ACT no refleja una intención legislativa que conceda una exención contributiva a dicha Corporación Pública sobre los arbitrios de construcción, más allá de la provista en la Ley de Municipios Autónomos. Es decir, que, si bien la ACT

---

[85] 9 LPRA § 2017.

está eximida de pagar arbitrios de construcción en virtud de la Ley de Municipios Autónomos, las personas naturales o jurídicas que contraten con ella no lo están, porque así lo declara expresamente el Art. 2.007 (f) de la mencionada Ley.

En cambio, la disposición de exención de la Ley de ACT se ajusta más a la que contiene la Ley de la Autoridad de Edificios Públicos,[86] según aplicada en el caso de *Municipio de Utuado* v. *Aireko Construction Corp.*, supra, y a la de la *Ley de la Autoridad de Energía Eléctrica de Puerto Rico*,[87] según la interpretamos en este foro intermedio en el caso de *Municipio de Maunabo* v. *Cobra Acquisitions*, supra.

En el primero, *Municipio de Utuado* v. *Aireko Construction Corp.,* supra, el Tribunal Supremo validó la imposición de arbitrios de construcción a una compañía privada que contrató una obra de construcción con la Autoridad de Edificios Públicos. En el segundo, *Municipio de Maunabo* v. *Cobra Acquisitions*, supra, este Foro intermedio razonó que, aunque la Autoridad de Energía Eléctrica estaba eximida del pago de arbitrios conforme que la Sección 22 de la Ley habilitadora de la Corporación Pública,[88] el contratista

---

[86] La disposición de la Ley de la Autoridad de Edificios Públicos, Ley Núm. 56 de 19 de junio de 1958, que dio paso a la imposición contributiva a Aireko, establecía, que:
"Con el propósito de facilitar a la Autoridad la gestión de fondos y permitir realizar sus fines corporativos, los bienes y propiedades de la Autoridad, o cualquier subsidiaria creada por la Autoridad, así como los bonos emitidos por la Autoridad o cualquier subsidiaria de ésta y las rentas que de ellos se devenguen, estarán y permanecerán en todo tiempo exentos de contribución. Igualmente, la Autoridad o cualquier subsidiaria de la misma, creada al amparo del Artículo 5, inciso (22) de la Ley Núm. 56 de 19 de junio de 1958, según enmendada, estará exenta del pago de contribuciones sobre los ingresos derivados de sus propiedades, empresas o cualquier otra actividad, de los impuestos sobre artículos de uso o consumo de su propiedad introducidos en Puerto Rico o adquiridos por la Autoridad o su subsidiaria en cualquier forma, así como de contribuciones sobre la propiedad y cualquier tipo de contribución municipal". 22 LPRA § 909.
[87] Ley de la Autoridad de Energía Eléctrica de Puerto Rico, Ley Núm. 83 de 2 de mayo de 1941, según enmendada. 22 LPRA § 191 *et seq.*
[88] Dicha Sección 22, establece:
(a) Por la presente se dispone y se declara que los fines para los que la Autoridad se crea y debe ejercer sus poderes son: la conservación de los recursos naturales, el mejoramiento del bienestar general, y el fomento del comercio y la prosperidad, y son todos ellos propósitos de fines públicos para beneficio del Estado Libre Asociado de Puerto Rico en todos sentidos y, por tanto, la Autoridad no será requerida para pagar ningunas contribuciones estatales o municipales, o impuestos de cualquier tipo sobre ninguna de las propiedades muebles e inmuebles adquiridas por ella o bajo su potestad, dominio, posesión o inspección, o sobre sus actividades en la explotación y conservación de cualquier empresa, o sobre los ingresos derivados de cualesquiera de sus empresas y actividades, o sobre su volumen de negocios. Las personas que celebren contratos con la Autoridad no estarán sujetas al impuesto gubernamental sobre contratos, establecido en la Ley 1-2011, según enmendada, conocida como el "Código de Rentas Internas de Puerto Rico de 2011". 22 LPRA § 212.

privado, Cobra, no lo estaba. Igual que en estos casos, la disposición de exención sobre el pago arbitrios de construcción contenida en la Ley habilitadora de la ACT nada dispone expresamente en cuanto extenderla a favor de una persona natural o jurídica privada que contrate con ella la realización de una obra de construcción.[89] Por lo tanto, en ausencia de disposición especial que conflija con la Ley de Municipios Autónomos, Núm. 81-1991, es este el mandato de ley aplicable.

En fin, el Art. 2.007 (f) de la Ley de Municipios Autónomos exime del pago de arbitrios de construcción a la dueña de la obra, ACT, por ser una corporación pública.[90] Sin embargo, el citado artículo dispone que "la exención no le aplicará a las obras de construcción ejecutadas por una persona natural o jurídica privada, actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o Municipal".[91] Siendo Super Asphalt una persona jurídica privada que contrató con ACT, una corporación pública, la realización de una obra de construcción en los límites territoriales del Municipio de Cayey, no está cobijada por la exención del pago de arbitrios de construcción.

La interpretación que precede es la más cónsona con la intención legislativa al aprobar la Ley Núm. 81-1991. Esa intención fue consignada posteriormente en la Exposición de Motivos de la Ley Núm. 130-1998. Esta nos dice, primeramente, que **no es correcto asumir** que las protecciones que provee la ley a las corporaciones públicas se extienden **automáticamente** a una persona natural o jurídica privada que contrate con estas para realizar obras de construcción.[92] Luego, en palabras del propio legislador, añade que el propósito de la enmienda fue el siguiente:

> [A]segurar que **todo contratista** que realice una obra pública del Gobierno Central, **pague el arbitrio de construcción** correspondiente en el municipio en donde se lleve a cabo dicha obra, previo al comienzo de la misma. Con esta disposición, la Asamblea Legislativa reafirma la facultad cedida por Ley a los municipios de allegar fondos a sus respectivos Gobiernos

---

[89] 9 LPRA § 2004a (Énfasis nuestro).
[90] 21 LPRA § 4057 (derogada 2020).
[91] *Id.*
[92] Exposición de Motivos de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, Ley Núm. 130, (1998 [Parte 1] LPR 539).

Municipales para sufragar los servicios que otorgan a sus ciudadanos.[93]

Enfatizamos que, a tenor con el lenguaje amplio adoptado por el legislador, el cual incluye absolutos, es forzoso concluir que no hubo intención de extenderle la exención del pago de arbitrios de construcción de ACT a Super Asphalt. No podemos obviar el mandato de que "las exenciones contributivas se deben interpretar restrictivamente y, en caso de duda, a favor de su inexistencia".[94]

Tampoco nos persuade el argumento de Super Asphalt de que, la Ley 81-1991 impide la imposición de arbitrios de construcción de forma directa o indirecta a la ACT, a través del cobro del arbitrio al contratista. En <u>primer</u> lugar, la Ley de Municipios Autónomos no está en pugna con la Ley habilitadora de la ACT. Por ello, es la Ley de Municipios Autónomos la que rige la determinación de si es extensible o no la exención del pago de arbitrios de construcción a Super Asphalt. Ciertamente, la Corporación Pública ACT es dueña de la obra de construcción y, como explicamos anteriormente, Super Asphalt es una persona jurídica privada contratada por esta para realizar la misma.

En <u>segundo</u> lugar, el argumento de Super Asphalt parece surgir de la interpretación que hace del caso *Interior Developers* v. *Mun. de San Juan*, supra. Es cierto que en ese caso el Tribunal Supremo resolvió "que los arbitrios de construcción que imponen los municipios al amparo del Art. 2.002(d) de la Ley 81 recaen en la obra de construcción, no en el contratista que la ejecuta".[95] Así también lo aclaró en *Municipio de Utuado* v. *Aireko Construction Corp.,* supra. Sin embargo, ello no tiene el alcance de eximir del pago de arbitrios de construcción a las compañías que contraten efectuar obras de construcción con las entidades gubernamentales eximidas que sean dueñas de las obras.

---

[93] *Id.*, pág. 540.
[94] *Coop. Ahorro Rincón* v. *Mun. Mayagüez*, 200 DPR 546, 560 (2018) (citando a *Pfizer Pharm.* v. *Mun. de Vega Baja*, 182 DPR 267, 279 (2011)).
[95] *Interior Developers* v. *Mun. de San Juan*, 177 DPR 693, 705 (2009).

Por el contrario, en ninguna parte del caso de *Municipio de Utuado* v. *Aireko Construction Corp.*, supra, o de *Interior Developers* v. *Mun. de San Juan*, supra, nuestro Alto foro resuelve o intuye que, si la dueña de la obra es una corporación pública o instrumentalidad gubernamental exenta del pago de arbitrios de construcción, de igual forma procede eximir a la persona natural o jurídica contratada para ejecutarla. De hecho, en el mencionado caso de *Municipio de Utuado* v. *Aireko Construction Corp.*, supra, en el que, similar al que hoy atendemos, una instrumentalidad gubernamental -la Autoridad de Edificios Públicos-, contrató a una persona jurídica privada para realizar una obra de construcción, el Tribunal Supremo validó el cobro de los arbitrios de construcción debido a que el mero cambio de contratista no requería imponer otro arbitrio de construcción sobre la misma obra.[96]

Fortalece nuestra interpretación el hecho de que, ya está contemplado en la ley, que **el arbitrio de construcción forme parte del costo de la obra**,[97] **incluso cuando la dueña sea una entidad eximida del pago**, que contrata a una persona natural o jurídica privada para que ejecute la obra.[98] La definición de "contribuyente" establece de manera expresa que, "[e]l arbitrio formará parte del costo de la obra".[99] Siguiente el mandato de ley, el 9 de febrero de 2016, la ACT le notificó a Super Asphalt que el contrato para la ejecución de la obra por la cantidad de $1,096,742.00 **incluía los costos asociados a los arbitrios de construcción**.[100] Fue la propia ACT, quien, conforme al precitado Art. 1.003 (ee) (2) de la Ley Núm. 81-1991, incluyó el pago de arbitrios de construcción desde el inicio del contrato.

En resumen, aplicando las guías establecidas en la doctrina para determinar si aplica determinada exención sobre los arbitrios de construcción municipal, es decir, el tipo de obra, su localización y a quién pertenece la

---

[96] *Municipio de Utuado* v. *Aireko Construction Corp.*,176 DPR 897 (2009).

[97] Véase, además, *Municipio de Utuado* v. 176 DPR, págs. 910-912 (Donde se analiza el artículo 2.002 de la Ley 81-1991 sobre la facultad de los municipios para imponer contribuciones e, inequívocamente, contempla que, pese a que "dicha suma proviene del dueño de la obra" es el contratista quien paga el arbitrio de contribución).

[98] Conforme surge, cuando el último inciso habla de "entidad gubernamental" no distingue entre aquellas eximidas del pago de arbitrios de construcción de las que no lo están.

[99] 21 LPRA § 4001 (derogada 2020).

[100] Apéndice del recurso, pág. 52 (Énfasis nuestro).

misma, y a la luz del análisis preciso de la disposición de la Ley habilitadora de la ACT, resolvemos que Super Asphalt no está eximida del pago de los arbitrios de construcción de la obra que contrató con la ACT realizar en el Municipio de Cayey. Actuó correctamente dicho Municipio al cobrarle los arbitrios de construcción a Super Asphalt, por ser este inequívocamente el contribuyente obligado por ley a pagar.[101] Resolver lo contrario tendría el efecto de concederle una exención contributiva por *fiat* judicial, en contravención al texto claro y libre de toda ambigüedad contenido en la ley y a la intención legislativa de garantizar la autonomía fiscal a los municipios. El segundo error no se cometió.

VI.

En su **tercer señalamiento de error**, Super Asphalt plantea que erró el Foro *a quo* al permitirle al Municipio de Cayey comparecer fuera del término de sesenta (60) días. Alega que el 17 de junio de 2021 el Municipio de Cayey fue notificado del *Recurso de Revisión Judicial* y que, ante su incomparecencia, el 30 de septiembre de 2021, presentaron *Moci[ó]n Solicitando Anotaci[ó]n en Rebeld[í]a y se Declare con Lugar Recurso.*[102] Indica que, a pesar de esto, no fue hasta el 2 de septiembre de 2022 que compareció el Municipio de Cayey mediante *Moción en Representación y Solicitud de Prórroga.* No le asiste razón. Veamos por qué.

La Regla 45.1 de Procedimiento Civil[103] dispone que, el Tribunal podrá ordenar la rebeldía cuando una parte incumple con algún deber procesal o ha dejado de ejercer su derecho a defenderse.[104] Las Reglas de Procedimiento Civil deben interpretarse para "facilitar el acceso a los tribunales y el manejo del proceso, de forma que garanticen una solución justa, rápida y económica de todo procedimiento".[105] Específicamente, según nuestro Tribunal Supremo

---

[101] 21 LPRA § 4001 (derogada 2020).

[102] Surge de *SUMAC* que esta *Moción* fue atendida el 11 de enero de 2024 cuando el Tribunal de Primera Instancia declaró No Ha Lugar la misma. *SUMAC* 16.

[103] 32 LPRA Ap. V, R. 45.1.

[104] *Rivera Figueroa* v. *Joe's European Shop*, 183 DPR 580 (2011); Véase, también RAFAEL HERNÁNDEZ COLÓN, PRÁCTICA JURÍDICA DE PUERTO RICO, DERECHO PROCESAL CIVIL, 5ta ed. San Juan, PR, Ed. Lexisnexis, 2010, pág. 287.

[105] *Imp. Vilca, Inc.* v. *Hogares Crea, Inc.*, 118 DPR 679, 687 (1987) (citando la Regla 1 de Procedimiento Civil, 32 LPRA Ap. III, R. 1; *Román Cruz* v. *Díaz Rifas*, 113 DPR 500, 506-507 (1982); *J.R.T.* v. *Missy Mfg. Corp.*, 99 DPR 805, 811 (1971)).

"las Reglas 45.3 y 49.2 de las de Procedimiento Civil deben interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una anotación de rebeldía o una sentencia, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos".[106]

La rebeldía es un mecanismo procesal discrecional para el foro de instancia, que "no se sostiene ante el ejercicio burdo o injusto".[107] Siempre, la alegación de una buena defensa debe inclinar la balanza a favor de la vista en los méritos del asunto, a menos que las circunstancias del caso sean de tal naturaleza que revelen un ánimo contumaz o temerario por parte de la parte demandada.[108] De manera que, la imposición de sanciones por el Tribunal "para beneficio de las partes o el Estado, o ambos -en sus distintas modalidades- representa la solución judicial al eterno conflicto en que se debaten dos legítimos intereses: el procesamiento rápido y económico de las controversias frente a una adjudicación justa, preferiblemente en sus méritos".[109]

En este caso, si bien es cierto que el Municipio de Cayey compareció expirado el término de sesenta (60) días y que Super Asphalt solicitó oportunamente la anotación de la rebeldía, el Foro primario ejerció su discreción y decidió no anotar la misma. No debemos intervenir con la discreción judicial del Foro primario, por entender que no incurrió en abuso de discreción y no existe indicio de que el Municipio actuó con ánimo contumaz o temerario. El tercer y último señalamiento de error tampoco se cometió.

VII.

Por los fundamentos antes expuestos, se *confirma* la *Sentencia* apelada.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.  El Juez Candelaria Rosa está conforme con la presente

---

[106] *Díaz* v. *Tribunal*, 93 DPR 79, 87 (1966).
[107] *Id.*
[108] *Román Cruz* v. 113 DPR, pág. 507; *J.R.T.* v. 99 DPR, pág. 811.
[109] *Imp. Vilca, Inc.* v. 118 DPR, pág. 687.

Sentencia por considerar que la atención particularizada de la Ley habilitadora de la ACT que se efectúa en la misma la distingue y desmarca del razonamiento en que se fundamentó su voto en *Aireko v. Municipio de Moca*, KLAN201801275.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones